UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

               Plaintiff,                                    Case No. 1:10-cv-965

and                                                  HON. JANET T. NEFF

JUDITH FULLER,

               Intervenor-Plaintiff,

v.

RANIR, LLC,

               Defendant.

_____/

## OPINION

Plaintiff Equal Employment Opportunity Commission (EEOC) brought this enforcement action against Defendant Ranir, LLC (Ranir), for its alleged violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Pending before the Court is Ranir's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) on the basis that the action is time-barred in light of a limitations provision in an employment agreement between Ranir and Intervenor-Plaintiff Judith Fuller, whom Ranir formerly employed (Dkt 26). The EEOC and Fuller each filed a response to Ranir's motion (Dkts 29-30), and Ranir filed a reply (Dkt 28). Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are

adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d).  For the reasons discussed herein, the Court denies the motion.

## I.  BACKGROUND

Defendant Ranir is a Grand Rapids, Michigan corporation that manufactures and markets consumer oral care products.  Ranir employed Fuller on June 13, 1995 (Dkt 12, Intervenor Compl. ¶ 11).  At or near the time of her initial employment, and in conjunction with her receipt of an Employee Handbook, Fuller signed an "Acknowledgment" form, acknowledging receipt of the Handbook and its policies in the first paragraph of the form and indicating in the second paragraph the following:

> Finally, I agree that I shall not commence any action or suit relating to my employment with the Company (or termination of the employment) more than six (6) months after the termination of my employment, and I agree to waive any statutes of limitations to the contrary.  I understand that this means that even if the law would give me the right to wait a longer time to make a claim, I am waiving that right, and that any claims not brought within six (6) months after my employment ends shall be barred.

(Dkt 8-1.)

Fuller last worked for Ranir as an "assembler level II," assembling dental floss on an insert and placing it in a container (Dkt 12, Intervenor Compl. ¶ 11).  She performed her job while sitting (*id.*).  On or about November 6, 2007, she went on medical leave to have surgery to replace her right knee because of osteoarthritis (*id.* ¶ 12).  She returned to work, without restrictions, on February 1, 2008 (*id.* ¶ 13).  She alleges that by February 17, 2008, however, she was having difficulty walking because of pain in her right knee and began to use a cane (*id.* ¶ 14).  Ranir terminated Fuller's employment on March 14, 2008 (Dkt 1, Compl. ¶ 8).

2

On May 22, 2008, Fuller filed a charge of disability discrimination with the EEOC based on the allegation that Ranir discriminated against her both in failing to reasonably accommodate her disability and terminating her employment on the basis of her disability: degenerative osteoarthritis in both knees (Dkt 12, Intervenor Compl. ¶ 9).  The EEOC issued a determination in Fuller's favor on September 1, 2009.

Fuller did not thereafter file suit against Ranir; however, on September 30, 2010, the EEOC commenced this enforcement action.  This Court permitted Fuller to file an Intervenor Complaint, in which she also asserted a claim under the ADA (Dkt 12).[1]  Ranir  subsequently proposed filing the instant motion to dismiss the action against it as time-barred (Dkt 14).  Following a pre-motion conference, the Court issued a briefing schedule, permitting the parties to brief the motion (Dkt 20).

## II.  ANALYSIS

### A.  Motion Standard

In deciding whether to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6), the court must accept the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive dismissal, the complaint must contain enough facts to establish a "plausible," as opposed to merely a "possible," entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662; 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.  The determination that a complaint was filed outside of the

---

[1]Intervenor-Plaintiff Fuller also asserted a claim under Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), MICH. COMP. LAWS §§ 37.1201 *et seq.*; however, in briefing her response to Defendant's motion, she agreed to dismiss the state-law claim (Dkt 30 at 4).

applicable limitations period is a conclusion of law.  *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 242 (6th Cir. 2009).

**B. Discussion**

Ranir's motion challenges the timing of this action against it in light of the six-month limitations period to which its employee, Intervenor-Plaintiff Fuller, agreed in her employment contract.  Ranir contends that the law in this circuit is "well established" that a limitations agreement is enforceable, even as to statutory claims, provided that the time limit is "reasonable" (Dkt 27 at 5-6).  For the reasonableness of a six-month limitations period, Ranir primarily relies on *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357 (6th Cir. 2004), where the Sixth Circuit Court of Appeals agreed with the district court that the six-month limitations period contained in the employee's employment application was reasonable and therefore operated to bar her sex discrimination claims against her employer.

It is well settled that parties may generally agree to shorten an applicable statutory limitations period through contractual limitations provisions, so long as the shorter period is reasonable.  *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *see also Myers v. W.-S. Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988) (holding that waivers in civil rights cases ought to be carefully scrutinized for voluntariness, but opining that "[t]here is nothing inherently unreasonable about a six-month limitations period").  Here, however, it is the applicability of the limitations provision, not the reasonableness of the six-month period agreed to therein, that is the threshold question.  Ranir seeks to have this Court apply the limitations provision in two ways:  to dismiss Fuller's Intervenor Complaint in its entirety and to dismiss the EEOC's Complaint to the

extent it seeks relief specific to Fuller (Dkt 27 at 10). The Court rejects both applications and denies Ranir's motion.

1.      ***The Effect of Fuller's Limitations Provision on the EEOC's Enforcement Action***

The EEOC is not a party to the contractual limitations provision upon which Ranir relies, nor did the EEOC separately contract with Ranir to limit its statutory claim. Ranir concedes that application of the limitations agreement to the EEOC's Complaint would not preclude the EEOC's claim for injunctive relief because the EEOC is not a party to the agreement; however, Ranir contends that with respect to back pay and any other "victim-specific relief," the EEOC is subject to the same affirmative defenses as would limit or preclude Fuller from obtaining such relief (Dkt 27 at 8-10). Ranir concludes that the limitations agreement therefore requires dismissal of the EEOC's Complaint to the extent that the EEOC is seeking relief specific to Fuller (*id.* at 10).

In response, the EEOC argues that Ranir fails to recognize the import of the fact that the Commission, not Fuller, commenced this lawsuit (Dkt 29 at 7). The EEOC contends that while its enforcement action is based upon Fuller's Charge, the EEOC does not merely stand in Fuller's shoes (*id.* at 9). According to the EEOC, the Commission is subject only to the strictures imposed by Congress in Title VII, and its congressional mandate to address discrimination cannot be signed away by third parties, regardless of the nature of the contract or agreement (*id.* at 11-12). The EEOC opines that its mandate to eradicate employment discrimination includes serving a public interest far broader than those of the charging party (*id.* at 12).

Although there is apparently no case law directly on point with the facts at bar, the Court agrees that the weight of existing case law supports the EEOC's position that Fuller's private limitations provision does not apply to restrict the EEOC's enforcement action.

The ADA proscribes discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The ADA incorporates the powers, remedies, and procedures applicable to employment discrimination actions under Title VII.  *EEOC v. Waffle House*, 534 U.S. 279, 285-86 (2002); *Garrett v. Weyerhaeuser Co.*, No. 98-1424, 1999 WL 777652, at *1 (6th Cir. Sept. 17, 1999).  *See* 42 U.S.C. § 12117(a).

"Title VII protects all employees of and applicants for employment with a covered employer, employment agency, labor organization, or training program against discrimination based on race, color, religion, sex, or national origin."  *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 323 (1980).  The EEOC is statutorily empowered "to prevent any person from engaging in any unlawful . . . practice" as set forth in Title VII.  *Id.*  The EEOC is specifically authorized to bring a civil action against any respondent upon failure to secure an acceptable conciliation agreement, the purpose of the action being to enjoin unlawful practices and to secure appropriate relief, including "reinstatement or hiring . . . , with or without back pay," for the victims of the discrimination.  *Id.* at 324 (citing 42 U.S.C. § 2000e-5(g) (Enforcement Powers); *see also* 42 U.S.C. § 1981a(a)(2), (d)(1)(B) (Damages)). "[T]he EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes."  *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368 (1977).

In *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir. 1999), the Sixth Circuit Court of Appeals addressed the extensive power of the EEOC to remedy unlawful

employment discrimination under Title VII and considered whether a single employee could, by entering into a private arbitration agreement with her employer, divest the EEOC of that congressional grant of authority.  The Sixth Circuit held that courts may not treat the agreement of a private party to arbitrate her action as the agreement of the EEOC to arbitrate its action.  Finding preclusion and waiver principles inapplicable, the Sixth Circuit examined the evolution of Title VII, concluding that "Congress crafted Title VII so that the EEOC would possess an independent right to sue in federal court to vindicate the public interest against employment discrimination" and emphasizing that the EEOC pursues "an interest broader than the one a private Title VII litigant pursues." *Id.* at 462.  The Sixth Circuit reasoned that to allow private parties to take that right away would completely undo Congress' effort.  The Sixth Circuit stated, "[i]n essence, our interest in protecting, as a matter of public policy, the EEOC's power to guide the course of every Title VII action outweighs the interest in enforcing [the employee's] private promise to arbitrate against the EEOC."  *Id.* at 461.  *See also Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987) ("[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.").

Tracing the law providing for such liability and the EEOC's authority to bring suit, the Sixth Circuit found "no reason why the EEOC could not seek monetary remedies in its lawsuit on behalf of an individual who could otherwise have pursued an arbitral remedy, just as it always has when suing on behalf of an individual." *Frank's Nursery*, 177 F.3d at 466.  The Sixth Circuit opined that "limiting the EEOC to the pursuit of injunctive and not monetary relief on behalf of aggrieved individuals would severely impede its ability to protect the public interest against unlawful employment discrimination, and would effectively eradicate the efforts of Congress to provide

meaningful enforcement powers to the EEOC." *Id.* Moreover, the Sixth Circuit indicated that "[i]f Congress believed the EEOC could effectively eradicate employment discrimination through injunctive remedies alone, it would not have empowered the EEOC to obtain more." *Id.* The Sixth Circuit also noted that "[f]ederal courts are equipped well to account for situations where an aggrieved individual has already received satisfaction of her interests through settlement or through arbitration." *Id.; see also EEOC v. Nw. Airlines, Inc.*, 188 F.3d 695, 701-02 (6th Cir. 1999) (applying *Frank's Nursery* to similarly conclude that the arbitration agreement between the employer and employee did not interfere with the EEOC's ability to file a Title VII action based on the employee's claims).

Subsequently, in *Waffle House*, 534 U.S. at 297, the United States Supreme Court also examined whether the fact that an employee had signed a mandatory arbitration agreement with his employer limited the remedies available to the EEOC. The Supreme Court reached the same conclusion as the Sixth Circuit, holding that the EEOC's remedies were not limited by the private arbitration agreement. The Supreme Court held that

> Pursuant to Title VII and the ADA, whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function.

*Id.* at 296. The Supreme Court emphasized that "the EEOC is not merely a proxy for the victims of discrimination." *Id.* at 297 (quoting *Gen. Tel.*, 446 U.S. at 326).

Again, the parties do not direct this Court to any case law addressing the effect of a limitations agreement on an enforcement action brought by the EEOC, only to cases addressing the effect of an arbitration agreement. Ranir contends that *Waffle House* should be limited to its facts

8

and not extended to the facts at bar (Dkt 27 at 9-10). However, Ranir does not offer any persuasive reasons for distinguishing private arbitration agreements from private limitations agreements.

Moreover, the Supreme Court has recognized several situations, in addition to the situation where the employee has signed an arbitration agreement, in which the EEOC does not stand in the employee's shoes. *Waffle House*, 534 U.S. at 297-98 (citing *Occidental*, 432 U.S. at 368 (EEOC does not have to comply with state statutes of limitations); *Gen. Tel.*, 446 U.S. at 326 (EEOC does not have to satisfy Rule 23 class action requirements); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (EEOC is not precluded from seeking classwide and equitable relief in court on behalf of an employee who signed an arbitration agreement)); *see also EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 373 (4th Cir. 1976) ("It follows that the standing of the EEOC to sue under Title VII cannot be controlled or determined by the standing of the charging party to sue, limited as he is in rights to vindication of his own individual rights."); *EEOC v. McLean Trucking Co.*, 525 F.2d 1007 (6th Cir. 1975) (holding that neither the acceptance of an arbitration award nor the settlement of a separate action by an employee precludes the EEOC's right to bring an action in the public interest); *EEOC v. Catholic Healthcare W.*, 530 F. Supp. 2d 1096, 1107 (C.D. Cal. 2008) ("The EEOC may thus seek relief for ... any other employees who may have been affected by Defendant's discriminatory policy even though they have not complied with the requirements necessary to bring private actions on their own."). The Court is persuaded that Ranir's position is inconsistent with this line of cases indicating that the EEOC maintains broad discretion in cases that it initiates in its role to eradicate discriminatory practices.

For these reasons, the Court holds that Fuller's private limitations agreement with Ranir does not operate to divest the EEOC of its congressional grant of authority or limit its pursuit of relief.

2.      *The Effect of Fuller's Limitations Provision on her Intervenor Complaint*

An aggrieved person may intervene in an action brought by the EEOC where the action was commenced in response to a charge filed by the proposed intervenor. *See* 42 U.S.C. § 2000e–5(f); FED. R. CIV. P. 24(a)(1) (allowing intervention as a matter of right where a federal statute confers an unconditional right to intervene). As the parties here acknowledge, the effect an intervenor's private limitations agreement has on the course of the intervenor's litigation, if any, has also not been definitively explored in the case law.

Ranir argues that the filing of the EEOC enforcement action does not change the "individual nature" of Fuller's Intervenor Complaint, *i.e.,* that Fuller is still subject to individual defenses and that her limitations agreement renders her action time-barred (Dkt 28 at 3-4). In response, Fuller argues that she did not bring an independent disability claim but is intervening in the EEOC's enforcement action (Dkt 30 at 5-8). Fuller argues that she therefore has a right to the full panoply of EEOC procedures (*id.* at 8).

Although the precise issue has not been definitively explored, the Sixth Circuit's decision in *Frank's Nursery* also provides guidance on this issue inasmuch as the Sixth Circuit examined in detail the import of the EEOC retaining "exclusive jurisdiction" of an action. The Sixth Circuit explained that

> when the EEOC decides to retain exclusive jurisdiction by exercising its statutory right to sue under Title VII, it implements Congress' purpose by taking the power to protect the public from unlawful employment discrimination out of the hands of the private individual aggrieved by such discrimination. Congress created such a scheme on the basis of its determination that placing the impetus on individuals to enforce Title VII was not sufficient, partly because private employers successfully relied on the failure of aggrieved employees to sue.

10

177 F.3d at 464. "[W]hile Title VII affords recovery through private action or an action by the EEOC, it does not allow both." *Id.* at 466. "[T]he lawsuit of one will preclude the lawsuit of another." *Id.* at 462.

As set forth by the Sixth Circuit, the statutory framework illustrates that because the EEOC filed a cause of action against Ranir on Fuller's behalf, Fuller no longer possessed a private cause of action against Ranir that would be subject to her prior limitations agreement. Hence, even if Fuller had not signed a limitations agreement, she would not have been free to choose a judicial remedy for herself once the EEOC filed its suit on her behalf. *Cf. Frank's Nursery*, 177 F.3d at 464 ("even if [the employee] had not signed an agreement to arbitrate, she would not have been free to choose a judicial remedy for herself once the EEOC filed its suit on her behalf").

Ranir argues that a contrary result is indicated by the reasoning of the district court in *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 273 F. Supp. 2d 264 (E.D. N.Y. 2003), and the Eighth Circuit in *EEOC v. Woodmen of World Life. Ins. Soc'y*, 479 F.3d 561 (8th Cir. 2007), two cases involving an employee's arbitration agreement where the courts decided to stay the intervening employee's claims pending the conclusion of arbitration proceedings.

As a threshold matter, the district court's decision in *Rappaport* is not binding on this Court. More importantly, the district court in *Rappaport* did not address the loss of the intervenor's independent claim, as set forth by the Sixth Circuit in *Frank's Nursery*, which is the principal factor upon which Intervenor-Plaintiff Fuller's argument here relies. In contrast, at least one district court within this circuit, relying on *Frank's Nursery*, reached the conclusion that because the intervening plaintiffs lacked the right to bring an independent cause of action that would be subject to their arbitration agreements, they would not be compelled to arbitrate the claims presented in their

11

intervenor complaint. *EEOC v. Physician Servs., P.S.C.*, 425 F. Supp. 2d 859 (E.D. Ky. 2006); *see also Fritz v. FinancialEdge Cmty. Credit Union*, No. 11-13879, 2011 WL 6153688, * 3 (E.D. Mich. Dec. 12, 2011) ("Title VII ... bars an aggrieved individual from ever bringing such a suit should the EEOC choose to sue on its own").

Neither is this Court bound by the reasoning of the Eighth Circuit in *Woodmen*. Although the Eighth Circuit was persuaded that neither Title VII nor the language in *Waffle House* precludes an employee from asserting claims in arbitration against the employer concurrently with the EEOC enforcement action, 479 F.3d at 568-70, its reasoning conflicts with the reasoning of the Sixth Circuit in *Frank's Nursery*, by which this Court is guided in this case. Further, this Court notes that the Fourth Circuit, like the Sixth Circuit, has decided that a charging party's intervention in an EEOC enforcement is not an independent lawsuit but rather a means to protect the charging party's interests in the EEOC's suit. *Adams v. Proctor & Gamble Mfg. Co.*, 697 F.2d 582, 583 (4th Cir. 1983) (*en banc*). Hence, in *EEOC v. Joslin Dry Goods*, No. 05-cv-177, 2006 WL 6669339, *2 (D. Colo. Mar. 29, 2006), the district court relying on this Fourth Circuit precedent concluded that the employee's intervention in the case merely gave her "status as a party to participate with the EEOC, and her complaint does not constitute an independent claim that would be subject to an arbitration agreement."

Again, there is not clear precedent regarding the effect of a limitations provision on an intervening complaint, only the arbitration agreement cases, as discussed. This Court concludes that once the EEOC filed its enforcement action, Fuller no longer possessed a private cause of action subject to her prior limitations agreement.

12

**III.  CONCLUSION**

For the foregoing reasons, Defendant Ranir's Motion to Dismiss (Dkt 26) is denied.  An Order consistent with this Opinion will enter.


DATED: February 6, 2012                          /s/ Janet T. Neff
                                        JANET T. NEFF
                                        United States District Judge

13